1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                         **DISTRICT OF NEVADA**
6
7   FREDERIC  K. DIXON,                )
                                       )
8            Petitioner,               )        2:09-cv-0066-PMP-PAL
                                       )
9   vs.                                )        **ORDER**
                                       )
10  BRIAN E. WILLIAMS, SR., *et al.*,  )
                                       )
11           Respondents.              )
                                       )
12  _____/

13          This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by Frederic

14  K. Dixon, a Nevada prisoner.  Before the Court is respondents' answer to the remaining claims

15  (docket #30) and petitioner's reply (docket # 36).  Also pending in this action is the respondents'

16  motion to strike parts of the petitioner's reply (docket #35) and petitioner's response to that motion.

17  Finally, there have been filed in the Court's docket letters to the judge from non-parties addressing

18  the character of petitioner (docket #37 and #38).  These documents shall be stricken from the record

19  as inappropriate and unauthorized filings.

20  **A.      PROCEDURAL HISTORY**

21          Petitioner was convicted of second degree murder with the use of a deadly weapon in the

22  Eighth Judicial District Court in October, 2004, following a jury trial.  Exhibit 64.[1]  Petitioner

23  pursued a direct appeal raising nine grounds for relief.  Exhibit 79.  After full briefing, the Nevada

24  Supreme Court entered its order affirming the conviction.  Exhibit 85.  Thereafter, petitioner filed a

25  _____

26          [1] The exhibits referenced in this Order were filed by respondents and are found in the Court's

record at docket #10.

state post-conviction petition for writ of habeas corpus raising eleven grounds for relief.  Exhibit 92.  The petition was denied by the state district court on October 29, 2007.  Exhibit104.  Petitioner appealed and the Nevada Supreme Court affirmed the lower court's decision on December 16, 2008.  Exhibit 106.  This federal action followed with petitioner filing his petition on January 1, 2009 (docket #1).  The petition raises seventeen grounds for relief.  Respondents  moved to dismiss several grounds presented in the petition which the Court granted, dismissing claims one through five, seven, subparts a, c, e-I, and k-m of eight, ground eleven, and thirteen.  Respondents have filed their answer to the remaining claims and petitioner has replied.  The merits of the surviving grounds are discussed below.

**B.**     **DISCUSSION**

Respondents move to strike parts of the petitioner's reply brief as it addresses or attempts to address claims that have been dismissed by the Court and presents new facts or evidence to support other claims, which facts and evidence have never before been presented to this Court, and which, if presented at this late time, evade attack by respondents.

Petitioner opposes the motion to strike conceding that ground two of the petition was dismissed, but contending that he "reserved the right to argue this ground under Ineffective Assistance of Counsel," making the claim ripe for adjudication.  As for the new evidence, petitioner suggests, without citation to any authority,  that this Court has the authority to review claims *sua sponte* and can refer to reports or other documents "supported by the record."  He further argues that the documents he provides were part of the pre-trial record and were relied upon in support of a defense pretrial motion to dismiss on the grounds of police misconduct.

Rule 7 of the Rules Governing Section 2254 cases allows the court to direct the parties to expand the record with such items as "letters predating the filing of the petition, documents, exhibits, answers under oath to written interrogatories propounded by the judge, and affidavits.  The court may require that the documents be authenticated and must allow the opposing party an

2

opportunity "admit or deny their correctness.  In this instance, the Court did not make such an order and petitioner has not made a motion to allow for expansion of the record before this Court.  To the extent that petitioner presents new facts or evidence that was not before the state court on appeal or post-conviction review, such additions to a claim can make the claim unexhausted.  As such the motion to strike shall be granted and those portions of the petitioner's reply which are new to the record or which address claims that have previously been dismissed shall be disregarded by the Court.

Habeas Corpus Standards

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the standards of review  that this Court applies to the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 6 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

/ / /

3

1        A state court decision is an unreasonable application of clearly established Supreme Court

2   precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct

3   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

4   principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74 (*quoting Williams*,

5   529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

6   than incorrect or erroneous; the state court's application of clearly established law must be

7   objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

8        In determining whether a state court decision is contrary to federal law, this Court looks to

9   the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

10  *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 122 S.Ct. 324

11  (2001).  With respect to pure questions of fact, "a determination of a factual issue made by a State

12  court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

13  presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).  If there is

14  no reasoned decision upon which the Court can rely, then it must make an independent review of the

15  record to determine whether the state court clearly erred in its application of controlling federal law.

16  *See Delgado v. Lewis,*  223 F.3d 976, 982 (9th Cir.2000).

17       Respondents submit their answer to grounds six, eight (b, d, and j), nine, ten, twelve,

18  fourteen, fifteen and sixteen contending all grounds are without merit and that petitioner cannot

19  show the state courts' decisions permit relief under the AEDPA.

20       <u>Ground Six</u>

21       In ground six, petitioner claims the trial court abused its discretion by denying petitioner

22  counsel of his choice, in violation of the Sixth, Thirteen, and Fourteenth Amendments.  Specifically,

23  petitioner claims the trial court erroneously denied a motion for out-of-state counsel to appear *pro*

24  *hac vice*.  Petitioner contends that he felt he needed representation from an African American

25  attorney and contends the denial of this particular counsel violates his right to equal protection.

26

1    The Texas attorney, Arthur Washington, appeared on the second day of trial and moved to be

2    admitted  *pro hac vice*.   The Texas attorney's motion was denied because it was deficient under

3    Nevada Supreme Court Rule 42, a fact admitted by the applicant.  Exhibit 54, pp. 3-6. Although he

4    was not allowed to sit at counsel table, address the court or the jury Mr. Washington was permitted

5    to sit on the front row behind the bar and to confer with counsel and the defendant.  *Id.*

6    "A defendant's right to the counsel of his choice includes the right to have an out-of-state

7    lawyer admitted *pro hac vice*." *United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir.1993) (citation

8    omitted), overruled on other grounds by *United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999). "[A]

9    decision denying a *pro hac vice* admission necessarily implicates constitutional concerns."

10   *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir.1989) (citation omitted). "A criminal

11   defendant's exercise of this right cannot unduly hinder the fair, efficient and orderly administration

12   of justice." *United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir.1987) (citations omitted).

13   Trial courts have the right and the authority to establish criteria for admitting lawyers who argue

14   before them and those criteria have been upheld by the courts.  *U.S. v. Ensign,* 491 F.3d 1109, 1114

15   (9th Cir. 2007).   For example, counsel may be refused on the basis of counsel's ethical unfitness.

16   *United States v. Collins*, 920 F.2d 619, 626 (10th Cir. 1990).  "The sixth amendment, however, does

17   not countenance the mechanistic application of a rule that permits a district court, without

18   articulating any grounds, to deny a defendant his right to counsel of choice." *U.S. v. Walters,* 309

19   F.3d 589 (9th Cir. 2002) quoting *United States v. Panzardi Alvarez,* 816 F.2d  at 817.

20   Petitioner argues the Nevada Supreme Court's decision in denying this claim on direct

21   appeal was unreasonable in that the court did not apply the holding of *Gonzalez-Lopez*, 548 U.S. 140

22   (2006), which was decided while his appeal was pending. The *Gonzalez-Lopez* Court held that if a

23   denial of a defendant's attorney of choice is erroneous, he need not show prejudice arising from the

24   performance of the counsel who did represent him.  *Id.,*at 144-145.   This argument fails for

25   petitioner, however, because his circumstances can be distinguished from those of *Gonzalez-Lopez*

26

5

1   and of *Lillie*, in that, unlike in those cases*,* petitioner was not seeking a substitution of counsel, but

2   rather, an additional or assistant counsel.  Moreover, although the court's reason for denying the *pro*

3   *hac vice* admission appears to be mechanistic, the defense counsel and the applicant offered nothing

4   to amend the motion to provide the requisite but missing  information in the verified application

5   required under NSCR 42.[2]  And, while counsel's application was denied, he was permitted to attend

6   and participate in attorney-client discussions and to offer his assistance to petitioner and his Nevada

7   counsel.

8          Petitioner has not shown that the Nevada Supreme Court's decision was unreasonable or

9   incorrect in its application of clearly established federal law.  Neither has he shown that the state

10  court's decision was an unreasonable determination of the facts.  Thus, no relief is warranted from

---

[2] Verified application.  The verified application required by this rule shall be on a form approved by the State Bar of Nevada. The approved application forms shall be available at the county clerk's office of the court, arbitrator, mediator, or administrative or governmental agency where the action is pending. The application shall state:

  (a) The applicant's residence and office address;
  (b) The court or courts to which the applicant has been admitted to practice and the date of such admission;
  (c) That the applicant is a member in good standing of such court or courts;
  (d) That the applicant is not currently suspended or disbarred in any court;
  (e) Whether the applicant is currently subject to any disciplinary proceedings by any organization with authority to discipline attorneys at law;
  (f) Whether the applicant has ever received public discipline including, but not limited to, suspension or disbarment, by any organization with authority to discipline attorneys at law;
  (g) The title of the court and cause, including arbitrations, mediations, or matters before an administrative agency or governmental body, in which the applicant or any member of the firm of attorneys with which the applicant is associated has filed an application to appear as counsel under this rule in the preceding 3 years, the date of each application, and whether it was granted;
  (h) The name, address, and telephone number of the active member of the State Bar of Nevada who is the attorney of record;
  (i) The name of each party and the name and address of counsel of record who appeared for that party;
  (j) That the applicant certifies that he or she shall be subject to the jurisdiction of the courts and disciplinary boards of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada;
  (k) That the applicant understands and shall comply with the standards of professional conduct required of members of the State Bar of Nevada; and
  (l) That the applicant has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

1    this Court on this claim.

2            Ground Eight

3            In this ground for relief, petitioner claims that his Fifth, Sixth, and Fourteenth Amendment

4    rights were violated when the trial court abused its discretion.  The surviving subparts of this claim

5    include (b) the trial court erred in its evidentiary rulings by admitting a redacted version of a security

6    videotape, (d) the court erred in denying a motion for mistrial based on Detective Mesinar's

7    testimony that investigators "apprehend the guilty," and, (j) by allowing the admission of Jermaine

8    Clay's taped police statement over the objection of defense counsel.

9            8(b) - Admission of Redacted Videotape

10           Petitioner complains the court erred in admitting a redacted version of the surveillance

11   videotape showing the shooting.  He contends the admission permitted the introduction of

12   inadmissible hearsay.  Respondents deny the assertion and assert and that evidentiary rulings are

13   matters of state law which are not subject to federal habeas review, citing *Estelle v. McGuire,* 502

14   U.S. 62 (1991).

15           As a general rule, a federal court in a habeas corpus case will not review the trial court's

16   actions concerning the admissibility of evidence. *Lisenba v. California*, 314 U.S. 219, 228 (1941);

17   *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983).  A state court's evidentiary rulings

18   are subject to federal habeas review only when it is shown that the trial court committed an error

19   which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.

20   *Jammal v. Van de Kamp*  926 F.2d 918, 920 (9th Cir. 1991); *Reiger v. Christensen*, 789 F.2d 1425,

21   1430 (9th Cir.1986); *see Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.1990) (petitioner not entitled to

22   relief unless admission of evidence violated his right to a fair trial under due process clause).  Thus,

23   this Court cannot disturb the state trial court's admission of the videotape recording on due process

24   grounds unless the admission of the photographs rendered the trial fundamentally unfair,  *Batchelor*

25   *v. Cupp*, 693 F.2d 859, 865 (9th Cir.1982), *cert*. denied, 463 U.S. 1212 (1983).

26

                                             7

1      In this case, the Nevada Supreme Court denied petitioner's claim about the admission of the

2   videotape on direct appeal, but without offering any legal or factual analysis, finding only that the

3   arguments lacked merit.  Exhibit 85, pp. 1-2.   However, as noted, the admission of such video

4   evidence is not improper under Nevada law so long as the prosecution is able to establish that the

5   videotape presents images that are accurate and present a true representation of the scenes being

6   recorded.  *See* NRS 52.015. In  *Archanian v. State,* 122 Nev. 1019, 1030 145 P.3d 1008, 1016

7   (2006) *cert.* denied 127 S. Ct. 3005 (2007) the Nevada Supreme Court found that the composite

8   videotape from a surveillance camera was proper where the defendant did not show the tape was

9   unfair, because there was no evidence of inaccuracy or that other relevant or exculpatory

10   information had been deleted or that the modification adversely affected or obscured content.

11      Here, petitioner claims the videotape allowed the admission of hearsay testimony.  He also

12   argue that the videotape was not properly authenticated and was of such poor quality that it does not

13   accurately depict the events.  The Nevada Supreme Court determined that the claim was without

14   merit because the state laid the proper evidentiary foundation to admit the videotape and the court

15   offered a specific limiting instruction to the jury.  Exhibit 85, p. 1.

16      If, as petitioner suggests, the video was blurry and did not even show him in the scene, he

17   cannot demonstrate that the videotape infected the trial with unfairness.  His complaints about the

18   sound of the shooting and the prosecutor's reference to that sound are immaterial.  It is clear the

19   victim was shot and such evidence would have been admissible even without the video/audio

20   recording.  Petitioner has not shown that he was prejudiced by the admission of the videotape.

21   Ground eight (b) shall be denied.

22                  8(d) - Denial of Mistrial Motion

23      During his testimony, Detective Mesinar was asked to "detail exactly what a homicide

24   investigator does."  His response was: "We document death."  "We apprehend the guilty, and

25   participate in prosecuting."  Exhibit 59, p. 17.  Defense counsel objected and moved to have the

26

1   statement stricken from the record and a cautionary instruction given to the jury.  *Id.*  The court then

2   called a recess, excused the jury and allowed argument on a motion for mistrial.  *Id.* at 18-30.  The

3   motion for mistrial was denied.  *Id.*

4          Generally, when evidence is heard by the jury that is subsequently ruled inadmissible, a

5   cautionary instruction from the judge is sufficient to cure any prejudice to the defendant. *See, e. g.,*

6   *United States v. McDonald*, 576 F.2d 1350, 1356 n.8 (9th Cir.), *cert.* denied, 439 U.S. 830 (1978);

7   *United States v. Kennedy*, 564 F.2d 1329, 1334 (9th Cir. 1977) *cert.* denied, 435 U.S. 944 (1978).

8   This procedure is the preferred alternative to declaring a mistrial when a witness makes

9   inappropriate or prejudicial remarks; mistrial is appropriate only where there has been so much

10   prejudice that an instruction is unlikely to cure it. *U.S. v. Escalante*  637 F.2d 1197, 1203 (9th Cir.

11   1980).  In evaluating whether inadmissible testimony heard by the jury was prejudicial, the court

12   must consider a number of factors, including: (1) the nature of the information that the jury heard,

13   *United States v. Bland*, 908 F.2d 471, 473 (9th Cir.1990), *cert.* denied, 506 U.S. 858 (1992); (2) what

14   remedial steps, if any, were taken, *United States v. Charmley*, 764 F.2d 675, 677 (9th Cir. 1985); and

15   (3) the weight of the evidence against the defendant. *United States v. Bagley*, 772 F.2d 482, 488 (9th

16   Cir.1985) (considering the "overwhelming evidence of guilt" in determining that error was not

17   prejudicial), *cert.* denied, 475 U.S. 1023 (1986).

18          In this case, the information heard by the jury was that the police office's job was to

19   "apprehend the guilty," a phrase which clearly indicated to the jury that the witness, a police

20   detective imbued with the credibility of the State, believed this defendant to be guilty.  In

21   remediation, the court chastised the witness outside the presence of the jury and instructed the jury

22   that the statement was to be stricken from the record and that they were not to consider it in their

23   deliberations.  The weight of the evidence against the petitioner, however, was sufficient to

24   overcome this prejudice and the error was, therefore, harmless as a matter of law.  The Nevada

25   Supreme Court's decision was neither contrary to or an unreasonable application of clearly

26

1   established federal law.

2               8(j) - Taped Statement of Clay

3       Here, petitioner claims he was denied a fair trial when the taped police statement of defense

4   witness Jermaine Clay was introduced into evidence.

5       Nevada law allows a witness to be impeached with his own prior statements under specific

6   circumstances.[3]  Respondents argue those circumstances were met because the admitted statement

7   was "a party's own statement."   However, this argument is inaccurate, as this witness was not a

8   party to the criminal action and had no authority to speak for a party.  However, the witness was

9   afforded an opportunity to explain or deny the statement furing his trial testimony and both parties

10  were permitted to question the witness about the inconsistencies.  Thus, the statement was properly

11  admitted under Nevada law and petitioner has introduced nothing to demonstrate that the admittance

12  of the statement prevented his trial from being fair.  Ground eight (j) shall be denied.

13  _____

14      [3]NRS 50.135  Prior statements of witness.

15    1. In examining a witness concerning a prior statement made by the witness, whether written or not,
    the statement need not be shown or its contents disclosed to the witness, but on request the statement
16  shall be shown or disclosed to opposing counsel.

17    2. Extrinsic evidence of a prior contradictory statement by a witness is inadmissible unless:

18    (a) The statement fulfills all the conditions required by subsection 3 of NRS 51.035*; or

19     (b) The witness is afforded an opportunity to explain or deny the statement and the opposite party
    is afforded an opportunity to interrogate the witness thereon.
20

21  *NRS 51.035 "Hearsay" defined.  "Hearsay" means a statement offered in evidence to prove the truth
    of the matter asserted unless: . . .
22      3.  The statement is offered against a party and is:
       (a) The party's own statement, in either the party's individual or a representative capacity;
23      (b) A statement of which the party has manifested adoption or belief in its truth;
       (c) A statement by a person authorized by the party to make a statement concerning the subject;
24      (d) A statement by the party's agent or servant concerning a matter within the scope of the party's
    agency or employment, made before the termination of the relationship; or
25    (e) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

26

1        Ground Nine

2        This claim for relief raises various claims of ineffective assistance of trial counsel including

3    (1) counsel's failure to subpoena the original videotape; (2) counsel's failure to call witnesses Jones

4    and Anderson; (3-7) counsel's failure to object to various jury instructions; (8) counsel's failure to

5    object to autopsy photos; (9) counsel's failure to object to prosecutorial misconduct; and (10) the

6    cumulative errors.

7        In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards by

8    which claims of ineffective counsel are to be measured.  In *Strickland*, the Court propounded a two

9    prong test; a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the

10   defense attorney's representation "fell below an objective standard of reasonableness," and (2) that

11   the attorney's deficient performance prejudiced the defendant such that "there is a reasonable

12   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

13   been different." *Strickland*, 466 U.S. at 688, 694.   The Court further instructed that review of an

14   attorney's performance must be "highly deferential," and must adopt counsel's perspective at the

15   time of the challenged conduct, in order to avoid the "distorting effects of hindsight." *Id.* at 689.  A

16   reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide

17   range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption

18   that ... the challenged action might be considered sound trial strategy." *Id.* (citation omitted).

19            (1) *Counsel failed to subpoena original videotape*.

20       Petitioner claims that his counsel should have, but failed to obtain the original of the

21   videotape played at his trial.  This claim was considered and denied by the Nevada Supreme Court

22   on appeal from denial of post-conviction relief.  That court concluded that petitioner had not shown

23   he was prejudiced by the absence of the original tape because

24                   [t]he uncontested evidence introduced at trial showed that appellant killed the
                     victim; the only contested issue was whether appellant's actions were
25                   justified as self-defense or his culpability lessened because the victim
                     attempted to commit a serious personal injury on appellant and appellant did

26

11

not have a sufficient 'interval between the provocation and the killing sufficient for the passion to cool and the voice of reason to be heard." [fn 7; *Allen v. State,* 98 Nev 354, 356, 647 P.2d 289, 291 (1982); see NRS 200.050(1) (providing that "there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing," in order to reduce a murder to voluntary manslaughter); *see also Runion v. State,* 116 Nev 1041, 1051, 13 P.3d 52, 59 (2000) . . . .] Numerous witnesses testified at trial that appellant and the victim engaged in a physical fight during which the victim brandished a box-cutter. They separated shortly thereafter and each walked to their respective cars which were some distance apart. Appellant then retrieved a pistol from his vehicle, ran to the victim's car, and discharged the pistol into the car where the victim was seated. Appellant admitted to the police that he was "angry" and acknowledged that the victim had disengaged from the fight before appellant shot him. Appellant never indicated that he saw any firearms in his statements to the police. Thus, in light of the testimony from those at the scene and the appellant's comments to the police, appellant did not meet his burden of demonstrating that the introduction of the unedited videotape would have conveyed sufficient insight into his intent at the time of the killing to conclude there was a reasonable probability of a different result at trial.

Exhibit 106, pp. 4-5.

Petitioner has not shown this state court's decision was unreasonable in its factual determinations or in its application of clearly established federal law. Neither has he shown the decision was contrary to federal laws. No relief is warranted on this claim.

(2) *Counsel failed to call Rosemary Jones and Marcus Anderson as witnesses.*

Petitioner claims counsel should have called Rosemary Jones to testify at trial, contending she would have testified about the damage to her car which was caused by the victim in an incident earlier on the evening of the killing. This claim, too, was denied by the state's high court, noting the jury heard evidence of the incident and of another wherein Jones was injured during a scuffle at the Club Seven. Exhibit 106, p. 5. The court concluded that because the jury was aware of the facts to which Jones might testify, petitioner had not been prejudiced by her absence.

A review of the trial transcript supports the Nevada Supreme Court's conclusions. Petitioner has not demonstrated that he was prejudiced by the absence of this witness.

12

1       (3) *Counsel failed to object to Jury Instruction #31.*

2       Jury Instruction #31 reads:

3       When you retire to consider your verdict, you must select one of your number to act as foreperson who will preside over your deliberations and will be your spokesperson here in court.

        During your deliberation, you will have all the exhibits which were admitted into evidence, these written instructions and forms of verdict which have been prepared for your convenience.

        Your verdict must be unanimous.  As soon as you have agreed upon a verdict, have it signed and dated by your foreperson and then return with it to this room.

8  Exhibit 65.

9       Petitioner complains that this instruction gave the jury an *Allen*[4] charge before deliberations.

10  He contends this is structural error which severely prejudiced the defense in that it failed to inform

11  the jurors that they had a right to disagree.   Petitioner further argues that "this is a jury instruction

12  issue, [and] not some petr [sic] complaint of counsel deficient performance."  Reply, p. 17.

13       Petitioner's arguments will not support relief on this claim for at least two reasons: First, the

14  claim was presented to the state courts as an ineffective assistance of counsel claim and not as a jury

15  instruction claim.  Second, the ineffective assistance of counsel claim fails as petitioner has not

16  shown that he was prejudiced by this purported erroneous instruction or counsel's failure to object to

17  it. *See* Exhibit 106, p. 6.

18       In *Allen* the jurors was instructed that if they were unable to reach a unanimous verdict they

19  each should consider his or her own view as to guilt or innocence in light of the majority of jurors'

20  view to the contrary and try to determine if their own view was reasonable in light of the arguments

21  offered by the majority.  *Allen v. U.S.*, 164 U.S. 492, 501 (1896).  That is not how the jury was

22  instructed in #31 and petitioner's contentions in that regard are unfounded.  Moreover, as the

23  Nevada Supreme Court held, petitioner has not shown that the jury was under "undue pressure to

24

25       [4] Petitioner does not explain in his petition what he means by an *Allen* charge.  However, he cites to *"Allen v. United States,* 164 U.S. 492, 501, 17 S Ct 154" in his reply brief.

26

reach a verdict" within a particular time and he has not shown that counsel's performance was deficient.  Exhibit 106.

(4) *Counsel failed to object to Jury Instruction #7.*

Jury Instruction #7 reads:

> If a person, without legal justification or excuse, intentionally uses a deadly weapon upon the person of another at a vital part, and inflicts a mortal wound, under circumstances showing no considerable provocation, then intent to kill may be implied as an inference of fact from the act itself.

Exhibit 65.

Petitioner argues this jury instruction violated his due process rights and lowered the burden of proof for the State and counsel's failure to object to the instruction was deficient.

Petitioner has not demonstrated that the Nevada Supreme Court's denial of this claim was erroneous.  It was neither contrary to nor an unreasonable application of clearly established federal law.  In fact, the state court's decision was proper and appropriate given the facts of the case and the law of the State of Nevada.

(5) *Counsel failed to object to Jury Instruction #9.*

Instruction #9 defined the elements of first degree murder, e.g. willfulness, deliberation and premeditation.  The Nevada Supreme Court rejected this claim stating

> [A]ppellant claimed that his trial counsel was ineffective for failing to object to instruction 9, which defined willfulness, deliberateness, and premeditation as those terms related to the charge of first-degree murder. He asserted that the instruction confused the jury.  Appellant failed to demonstrate that his counsel was deficient or that he was prejudice. Appellant did not explain how the instruction was incorrect or confused the jury [fn 10: *Hargrove v. State,* 100 Nev. 498, 501 P.2d 222, 225 (1984).] Moreover, appellant could not show a reasonable probability of a different result as the jury did not even convict him of first-degree murder pursuant to the instruction.

Exhibit 106, pp. 7-8.

Petitioner has not shown that this decision by the state's high court was in error under 28 U.S.C. § 2254.  He was not convicted of first degree murder.  Thus, the instruction becomes

14

1  irrelevant and cannot have prejudiced him.  He is not entitled to relief on this claim.

2                      (6) *Counsel failed to object to Jury instruction #14.*

3                      Jury Instruction #14 defines involuntary manslaughter as

4            the killing of a human being, without any intent to do so, in the
   commission of an unlawful act, or a lawful act which probably might
5            produce such a consequence in an unlawful manner, but where the
   involuntary killing occurs in the commission of an unlawful act,
6            which, in its consequences, naturally tends to destroy the life of a
   human being, or is committed in the prosecution of a felonious
7            intent, the offense is murder.

8  Exhibit 65.

9          Petitioner argues this instruction was in error because it "requires a jury to infer the

10  elemental fact upon proof of the basic facts."  This contention is nonsensical, as the instruction does

11  not address any inference of fact.  Moreover, the Nevada Supreme Court denied the claim on the

12  basis that it is proper for the state to seek a conviction for murder based on a theory of felony murder

13  "without even charging the underlying predicated felony. [fn11: *Holmes v. State,* 114 Nev. 1357,

14  1364, 972 P.2d 337, 341 (1998).]"  Exhibit 106, p. 8.

15          Petitioner has not demonstrated that he was prejudiced by this instruction or by counsel's

16  failure to object to it, as there is no basis for such an objection.  Moreover, as with Jury Instruction

17  #9, *supra.*, the instruction become irrelevant when he was convicted of Second Degree Murder

18  without reliance on an underlying felony.

19                      (7) *Counsel failed to object to Jury Instruction #15.*

20           Instruction #15 describes the amount of negligence required to find Involuntary

21  Manslaughter where the jury has found an unintentional killing.  It informs that the State need not

22  prove that the defendant acted with "extreme recklessness and wantonness."  Exhibit 65.

23          Petitioner claims that this instruction reduced the State's burden of proof.  The Nevada

24  Supreme Court denied the claim as follows:

25            [A]ppellant claims that his trial counsel was ineffective for failing to object
   to instruction 15.  He claimed that the instruction relieved the burden of
26

15

1   proving every element of involuntary manslaughter, specifically whether
    the appellant acted with extreme recklessness or wantonness.  Appellant
2   failed to demonstrate that his counsel was deficient or that he was
    prejudiced.  The district court instructed the jury that "the degree of
3   negligence required to be shown on a charge on [sic] Involuntary
    Manslaughter, where an unintentional killing is established, is such
4   recklessness or carelessness that is incompatible with proper regard for
    human life."  Further, the court stated that "[t]he State need not prove that
5   the defendant acted with extreme recklessness and wantonness."  The
    instruction correctly stated Nevada law. [fn 12: *See State v. Lewis,* 59 Nev.
6   262, 273-74, 91 P.2d 820, 824 (1939).] Moreover, appellant failed to
    demonstrate that there was a reasonable probability of a different result as
7   he was not convicted of involuntary manslaughter based on this standard.

8   Exhibit 106, pp. 8-9.

9        This decision was not contrary to the standard set out in *Strickland* and petitioner has not

10  demonstrated that the state court's decision was unreasonable in determining the facts or applying

11  the law.

12           (8) *Counsel failed to object to the admission of autopsy photos.*

13       Petitioner claims counsel was ineffective for not objecting to the admission of autopsy

14  photos at trial.  The admission of such photos lies within the discretion of the trial court.  *Batchelor*

15  *v. Cupp,* 693 F.2d 859 (9th Cir. 1982) *cert* denied 463 U.S. 1212, (1983).  Only if the admission of

16  the photos produced a trial that was fundamentally unfair can a reviewing court disturb a trial court's

17  decision to admit them.  *Id.* at 865.  As the Nevada Supreme Court said,

18

19       Appellant failed to demonstrate that he was prejudiced.  This Court has
         held that "even gruesome photographs are admissible if they aid in
20       ascertaining the truth, such as when used to show the cause of death, the
         severity of wounds and the manner of injury." [fn 13: *See Doyle v. State,*
21       116 Nev. 148, 160 , 995 P.2d 465, 473 (2000); *Turpen v. State,* 94 Nev.
         576, 577, 583 P.2d 1083, 1084 (1978) (holding that the admissibility of
22       autopsy photographs lies within the sound discretion of the district court
         and will not be overturned absent an abuse of discretion.)]  The autopsy
23       photographs were admitted during the medical examiner's testimony and
         used to illustrate his testimony.  Appellant did not identify which
24       photographs were so gruesome that his counsel should have objected to
         their admission.  Thus, he did not meet his burden of demonstrating that,
25       but for the admission of the photographs, there was a reasonable
         probability of a different result at trial.

26

16

Exhibit 106, p. 9.

Petitioner cannot show that this holding was incorrect under the *Strickland* standard.  No relief is warranted from this Court.

(9) *Counsel failed to object to prosecutorial misconduct.*

Petitioner claims counsel should have objected when the prosecutor commented on appellant's failure to testify, commented on a defense witness's failure to comply with the State's subpoenas, argued what appellant's motive and intent was after the shooting, commented on a defense witness's veracity, referred to the defense's expert witness as a "paid defense psychiatrist" hired to substantiate a self-defense claim, appealed to the emotions of the jury, informed the jury about what conduct makes up self defense, and tried to introduce autopsy photos of the victim to inflame the passions of the jury.

In considering prosecutorial misconduct and prejudice arising from the performance of counsel, the petitioner must demonstrate that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Darden v. Wainwright*  477 U.S. 168, 181 (1986) quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), and that counsel's failure to object resulted in prejudice under *Strickland*.

A prosecutor is allowed to deal a "hard blow" based on the evidence and all fair inferences therefrom, but courts may not permit "foul blows. *United States v. Prantil,* 764 F.2d 548, 555-56 (9th Cir.1985).  A prosecutor may express doubt about the veracity of a witness's testimony. *See United States v. Birges,* 723 F.2d 666, 672 (9th Cir.1984).  "It is not misconduct for the prosecutor to argue reasonable inferences based on the record." *United States v. Atcheson,* 94 F.3d 1237, 1244 (9th Cir.1996) (citation omitted).

In addition to petitioner's concession that counsel did object to the prosecutor's comments regarding the veracity and whereabout of the defense witness, he has also failed to show that the Nevada Supreme Court's handling of this claim was an error in federal law or factual determination.

17

1   The state court held

> 2   Even assuming that the challenged comments and conduct were improper, such prosecutorial misconduct may constitute harmless
> 3   error where there is overwhelming evidence of guilt [fn 14: *See King v. State,* 116 Nev. 349, 356 998 P.2d 1172, 1176 (2000) (providing
> 4   that prosecutorial misconduct may be harmless where there is overwhelming evidence of guilt); *Ross v. State,* 106 Nev. 924, 928,
> 5   803 P.2d 1104, 1106 (1990) (providing that to be reversible prosecutorial misconduct "must be prejudicial and not merely
> 6   harmless"); see also NRS 178.598 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be
> 7   disregarded.")]  Here, there was overwhelming evidence of guilt.

8   Exhibit 106, p. 10.   Thereafter, the court listed the evidence of guilt including evidence of the fight

9   between the victim and the petitioner, evidence that the victim had brandished a box-cutter and then

10  had walked away from the conflict, evidence that the petitioner knew the victim was "disengaging"

11  from the fight and, evidence taken from his own statements to police that, even though the victim

12  had disengaged, petitioner walked to his car, retrieved a firearm and fired the weapon into the

13  victim's vehicle repeatedly because he was angry.  *Id.*

14       Petitioner has not shown that he was prejudiced by the lack of objection to these various

15  wrongs.  A full measure of evidence to convict him was presented at trial, despite these possible

16  errors.  The decision of the state court was appropriate and included a reasonable determination of

17  facts.  Petitioner is not entitled to relief on this claim of ineffective assistance of counsel.

18           (10) *Cumulative effect of counsel's errors.*

19       Petitioner argues that he was denied the effective assistance of trial counsel due to the

20  cumulative effect of counsel's poor performance.

21       The cumulative error doctrine recognizes that the cumulative effect of several errors may

22  prejudice a defendant to the extent that his conviction must be overturned.  *See United States v.*

23  *Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).   In the case of the claim presented here, separate

24  errors by counsel at trial should be analyzed together to see whether their cumulative effect deprived

25  the defendant of his right to effective assistance. See *Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th

26

1    Cir.1997); *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978). They are, in other words, not

2    separate claims, but rather different aspects of a single claim of ineffective assistance of trial

3    counsel. *Sanders v. Ryder,* 342 F.3d 991, 1000 -1001 (9th Cir. 2003). The cumulative error doctrine,

4    however, does *not* permit the court to consider the cumulative effect of *non-errors*. *See Fuller v.*

5    *Roe*, 182 F.3d 699, 704 (9th Cir. 1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S.

6    473 (2000)("where there is no single constitutional error existing, nothing can accumulate to the

7    level of a constitutional violation").

8            As has been discussed above, the performance of counsel at trial has not been shown by

9    petitioner to have cause him prejudice sufficient to afford him relief.  Counsel's performance was

10   within the bounds reasonably expected and required.

11           Ground Ten

12           Petitioner's ground ten raised various claims of ineffective assistance of appellate counsel.

13   He argues that appellate counsel should have raised the issues presented in his petition as grounds

14   one through nine.  The merits of the surviving claims are discussed above.  He also contends that

15   appellate counsel's errors were cumulative and violated his constitutional rights.

16           Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

17   Fourteenth Amendment.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

18   assistance of appellate counsel are reviewed according to *Strickland's* two-pronged test.  *Miller v.*

19   *Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989)*; United States v. Birtle*, 792 F.2d 846, 847 (9th

20   Cir.1986).  Petitioner must be able to show that the claims not presented by appellate counsel would

21   have had a reasonable probability of success on appeal.  *Smith v. Robbins,* 528 U.S. 259, 285 (2000).

22   Petitioner cannot make such a showing as the Nevada Supreme Court has already determined that

23   the claims do not warrant relief or that petitioner failed to present sufficient specific facts to support

24   his claims.  Neither has petitioner demonstrated that the cumulative effects of these non-errors

25   impacted his appeal so that the outcome would have been different if counsel had performed

26

                                           19

1   differently.

2   Petitioner has not demonstrated to this Court that the state court's decision was wrong under 28

3   U.S.C. § 2254.  Thus, ground ten must be denied.

4          Ground Twelve

5         Petitioner claims that he suffered a violation of his constitutional rights when the court gave

6   an improper jury instruction on self defense in that the instruction advised that an "honest but

7   reasonable belief in the necessity for self-defense does not negate malice and does not reduce the

8   offense from murder to manslaughter."  He contends, rightfully, that the proper wording would be

9   "an honest but unreasonable belief...."  *See Runion v. State,* 116 Nev. 1041, 1051, 13 P.3d 52, 59

10  (2000); see also NRS 200.120-130.

11        Unless an error in jury instructions "vitiates *all* the jury's findings, *Sullivan v. Louisiana,* 508

12  U.S. 275, 281 (1993), and produces "consequences that are necessarily unquantifiable and

13  indeterminate," *id* at 282, harmless error analysis is appropriate.  *Neder v. U.S.* 527 U.S. 1, (1999).

14  And, rarely will an improper instruction justify reversal of a criminal conviction "where no objection

15  has been made in the trial court."  *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).

16        The Nevada Supreme Court analyzed this claim at some length, noting there was no

17  objection to the instruction from counsel and reviewing the matter in the "totality of the

18  circumstances" to determine "whether is was clear beyond a reasonable doubt that a rational jury

19  would have found the defendant guilty absent the error."  Exhibit 85, p. 2-4.  The court held as

20  follows:

21            We conclude that this error was harmless.  The first four
        paragraphs of Jury Instruction 19 state correctly that a defendant who

22          reasonably believes there is imminent danger of death or bodily harm
        may use deadly force to defend himself.  The instruction then incorrectly

23          states that an honest but reasonable belief will not reduce a murder
        charge to manslaughter [fn 7: Additionally, if the jury determined Dixon

24          possessed an honest but unreasonable belief in the necessity of deadly
        force, that conclusion would have had no effect on the outcome of this

25          case.  Such a belief is not sufficient to reduce Dixon's charge to
        manslaughter, even if Dixon had requested a manslaughter instruction.

26

1

*See Hill v. State,* 98 Nev 295, 296-97, 647 P.2d 370, 371 (1982) (court declined to adopt the doctrine of imperfect self-defense)].

2

Eyewitnesses testified that the altercation between Dixon and Nunley was over before Dixon shot him.  Nunley had put away a knife

3

and was walking back toward his car.  Dixon had stepped back from the scene, and the direct physical confrontation was over.  The jury heard

4

testimony and Dixon then walked deliberately back to his car, unlocked the door, and grabbed a gun.  Dixon then ran over to Nunley's vehicle

5

and shot him repeatedly.

Although one statement in the instruction was incorrect, we

6

conclude beyond a reasonable doubt that, given the totality of the jury instructions and the evidence admitted at trial, the error did not

7

substantially prejudice the jury's deliberations and verdict.

8

Exhibit 85, pp. 2-4.

9

Because the Nevada Supreme Court's decision on this claim was not contrary to or an

10

unreasonable application of federal law or an unreasonable finding of fact, petitioner cannot obtain

11

relief on this claim.

12

Ground Fourteen

13

In ground fourteen, petitioner claims the crime scene was contaminated and potential

14

evidence was mishandled.  He claims witnesses "were observed" to be nervous and suspicious,

15

while putting something in the trash after the shooting.  He further complains that the state did not

16

preserve the "best evidence" of the events because it did not obtain and keep the original video

17

surveillance tape.

18

Petitioner does not provide any facts regarding the evidence that might have been thrown in

19

the trash.  His arguments focus exclusively on the failure of the police to obtain and secure the video

20

surveillance tapes which, petitioner contends, would have provided a view of the events leading up

21

to the shooting.  He further contends the composite tape that was admitted into evidence did not

22

present a fair representation of the events and was used by the state against him without elaborating

23

on that argument.

24

The Nevada Supreme Court said in its order denying relief on direct appeal:

25

We have previously held that "[i]n order to establish a due process violation resulting from the state's loss or destruction of evidence, a

26

21

defendant must demonstrate either (1) that the state lost or destroyed the evidence in bad faith, or (2) that the loss unduly prejudiced the defendant's case and the evidence possessed an exculpatory value that was apparent before the evidence was destroyed." [fn 12: *Sheriff v. Warner,* 112 Nev. 1234, 1239-40, 926 P.2d 775, 778 (1996).] Because the police had no knowledge of the existence of a firearm prior to interviewing the casino employee and clearly did not act in bad faith, we conclude the State did not fail to preserve exculpatory evidence. [fn 13: We also conclude that the State did not fail to preserve exculpatory evidence when it destroyed the original security footage of the shooting.  Testimony at trial indicated that producing a composite tape for use in a criminal investigation was standard procedure and helped provide a useful aggregation of relevant footage.  Dixon has failed to demonstrate that the State erased the originals in bad faith, or that their unavailability prejudiced his defense.]

Exhibit 85, pp. 4-6.

Federal law holds that the failure to preserve evidence implicates the constitution only if the evidence will play a significant role in the suspect's defense.  The evidence must be obviously exculpatory before the evidence was destroyed and be of a type that the defendant would not be able to obtain comparable evidence by other reasonably available means.  *California v. Trombetta,* 467 U.S. 479, 488-489 (1984).  In this case, the petition is unclear as to what evidence petitioner believed the witnesses may have put in the trash and the surveillance video was preserved to some extent and was not, according to petitioner himself, exculpatory, as the state used the tape "as ammo" against the petitioner.

The state court's decision applies a proper standard reasonably and the fact-finding is reasonable.  No relief is warranted on ground fourteen.

Ground Fifteen

In ground fifteen, petitioner complains that the trial court erred in admitting a tape from a Las Vegas television station. The video was apparently taken by a bystander and provided to the television station.  Petitioner complains that the State did not offer a proper foundation for admitting the video because the person who made the recording was not present in court.

As previously noted, generally questions regarding the admissibility of evidence at trial is

22

left to the discretion of the trial court.    Only if the evidence violates due process will the federal

courts intercede. *Batchelor v. Cupp*, 693 F.2d at 865.  At trial, the video was authenticated by a

witness, Irving Jumping Eagle.  See Exhibit 57, pp. 122-123.  Petitioner was able to cross-examine

that witness to assuage any concerns he had about accuracy or source of the video.  Moreover, the

trial court offered a special instruction to the jury limiting its use of the videotape.  *Id.* at 123-125.

Petitioner has not shown that he was prejudiced by the admission of this evidence and the state

court's handling of the claim does not fall within the parameters of 28 U.S.C. § 2254.  Ground

fifteen shall be denied.

Ground Sixteen

Here petitioner challenges the trial court's refusal to suppress his out-of-court statements

which were made to police at the scene of the shooting.  According to petitioner, he approached the

police patrol officer and stated, "Officer, I shot him."  At that point, petitioner asserts, the officer

asked petitioner to turn around and put his hands behind his back.  The officer handcuffed petitioner

and "placed [him] under arrest."  Reply brief, p. 52.

Statements obtained from custodial interrogation of the defendant may not be used by the

prosecution unless it can show that the defendant has been fully advised of his right to remain silent.

*Miranda v. Arizona* 384 U.S. 436, 444 (1966).  Custodial interrogation is questioning "initiated by

law enforcement officers after a person has been taken into custody or otherwise deprived of his

freedom of action in any significant way." *Id.*   There is a public safety exception to the *Miranda*

rule which provides that a police officer may question a detainee about matters related to imminent

threats to safety without first offering the *Miranda* warnings.  *New York v. Quarles,* 467 U.S. 649,

655-57.

According to the officer's testimony, petitioner approached him and volunteered without

questioning, "Officer, I shot him."  I shot him, he had a knife, it was self-defense."  Exhibit 57, p,

70.  The officer went on to testify that the defendant "kept wanting to tell me his story and wanted to

tell me what happened." *Id.,* p. 73.  The officer advised petitioner that detectives would be coming to speak with him, but the petitioner continued to tell the events of the evening up to the time of the shooting.  *Id.,* p. 74.  When asked on cross-examination whether the interview of the petitioner was part of the normal process, the officer replied, "I did not interview him.  He spoke freely to me." *Id.* p. 80.  In fact, the officer confirmed several times that the petitioner's statements had been unsolicited and voluntary.

Additionally, the court conducted a hearing on a defense motion to suppress the statements and denied the motion on the bases that the statements were made prior to being detained, related to the whereabouts of the gun - a public safety issue, or offered voluntarily without interrogation while detained by the officer who was still trying to secure the crime scene.  Exhibit 43, pp. 24-26.

The Nevada Supreme Court denied this claim on a these same bases and petitioner has not demonstrated that the decision was contrary to or an unreasonable application of clearly established federal law.

Ground Seventeen

In ground seventeen, petitioner claims he was denied a jury of his peers, violating his right to equal protection under the Fourteenth Amendment.  Petitioner claims the State improperly excused a minority juror, without cause and on the basis of her ethnicity.[5]

The State may not use its peremptory challenges to exclude jurors on the basis of race. *Batson v. Kentucky,* 476 U.S. 79 (1986); *see also Miller-El v. Dretke,* 545 U.S. 231, 238 (2005).  In this instance, the State expressed an intent to peremptorily challenge juror number 52, which challenge was questioned under *Batson* by the defense.  Exhibit 54, pp. 116-118.  The State's

---

[5] In the petition, petitioner does not identify the juror's name or number.  The response refers to juror number 52 (a Ms. Jackson), however, petitioner refers to jurors named Callahan and Richardson in his reply.  Respondents, in their motion to strike, note that the trial court's treatment of this claim involved Ms. Jackson, not a Ms. Callahan.  Respondents argue the present reference to Callahan and Richardson are unexhausted and must be stricken or denied.  They also note that Ms. Callahan is not African American or black.  The Court agrees and addresses the claim in reference to Ms. Jackson.

offered reasoning related to the juror's statements of a personal experience of being shot, but not reporting the shooting to police.  The State questioned this potential juror's ability to take the shooting seriously.  *Id.*  The *Batson* challenge was denied and juror number 52 was not selected to serve on the jury.

The Nevada Supreme Court denied the *Batson* claim on direct appeal, finding it lacked merit and finding the state was able to present a race-neutral reason for the challenge.  Exhibit 85, p. 2. Petitioner has not shown this decision was improper under 28 U.S.C. § 2254.  No relief can be granted herein.

**C.      CERTIFICATE OF APPEALABILITY**

In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court

will therefore deny petitioner a certificate of appealability.

/ / /

**IT IS THEREFORE ORDERED** that petitioner's motion to strike (docket #35) is **GRANTED.**

**IT IS FURTHER ORDERED** that docket entries #37 and #38 shall be stricken from the record.

**IT IS FURTHER ORDERED** that the petition is **DENIED**.  The Certificate of Appealability shall be **DENIED**.  The Clerk shall enter judgment accordingly.

DATED:  September 17, 2010.

_____
PHILIP M. PRO
United States District Judge

26